UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: GEORGE AND PATRICIA DENISE HINES  CASE NO. 03-10885

IN RE: MARY ELIZABETH PRYOR  CASE NO. 04-15712

## OPINION

On consideration before the court are the Chapter 13 trustee's motions for orders declaring the §1322(b)(5) claims of Mid-State Homes current and all defaults cured; responses to said motions having been filed by Mid-State Homes and the respective debtors; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of these proceedings pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. These are core proceedings as defined in 28 U.S.C. §157(b)(2)(A), (B), and (O).

II.

In each of the above captioned cases, the Chapter 13 trustee filed her motions for orders declaring the §1322(b)(5) claims of Mid-State Homes current and all defaults cured. Mid-State Homes filed responses alleging that the debtors failed to pay hazard insurance premiums during the life of their Chapter 13 bankruptcy cases. The debtors filed responses requesting strict proof that the hazard insurance premiums had been paid by Mid-State Homes, and asserted that their mortgages were current.

The following facts were stipulated by the parties, to-wit:

1. In the Pryor case, the debtor obtained insurance from an outside carrier (All State), effective February 24, 2009, and the insurance placed by Mid-State Homes

was cancelled the same date.

2. In the Hines case, the debtors maintained a hazard insurance policy covering their residence since April 9, 2003. However, according to a letter admitted into evidence by stipulation from The Mitchell Company, dated December 12, 2008, the debtors did not inform The Mitchell Company that Mid-State Homes or Walter Mortgage was to be added as a mortgagee until December 12, 2008.

3. Copies of the proofs of claim filed by Mid-State Homes in the Pryor and Hines cases were admitted into evidence. These proofs of claim included copies of the promissory notes and deeds of trust executed by the debtors.

4. Copies of the building contracts, specifically Exhibit "C" to the contracts, entitled "New Construction Insurance Disclosure Statement," were received in evidence.

5. Policies of hazard insurance were issued through Best Insurors, Inc., as requested by the Hines and Pryor in their contract documents which were executed in favor of Mid-State Homes' predecessor-in-interest, Jim Walter Homes, Inc.

6. The amount of the hazard insurance premiums alleged to be owed by Pryor is $3,738.00 for the period from December 20, 2004, through February 24, 2009. The amount of the hazard insurance premiums alleged to be owed by the Hines is $4,501.00 for the period from March 19, 2003, through March 19, 2008.

The issue before the court is whether Rule 2016(a), Federal Rules of Bankruptcy Procedure, precludes the allowance of the hazard insurance premiums as a part of the Mid-State Homes claim in each case.

III.

Rule 2016(a), Federal Rules of Bankruptcy Procedures (hereinafter Rule 2016(a)), states in pertinent part as follows:

**(a) APPLICATION FOR COMPENSATION FOR REIMBURSEMENT**

An entity seeking interim or final compensation for services, or recent reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended, and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for the services

rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation received has been shared or whether an agreement or understanding exists between the applicant or any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefore, except the details of any agreement by the applicant for the sharing of compensation as a member or regular associate of the firm of lawyers or accountants will not be required...

The court is certainly aware that the text of Rule 2016(a) contains the requirement that the creditor must be seeking compensation or reimbursement of necessary expenses "from the estate." In this judicial district, the Chapter 13 confirmation order provides that property of the estate is not revested at confirmation in the debtors. Consequently, the automatic stay is not lifted by operation of law until the plan is completed or until some other "triggering" event occurs. Likewise, the bankruptcy estate and property of the estate remain intact. As such, this court concludes that a post-confirmation, pre-discharge assessment of hazard insurance premiums is an effort to seek compensation or reimbursement of expenses from the bankruptcy estate.

Rule 2016(a) covers reimbursable expenses sought after an estate comes into being and for so long as it remains in existence. *In re Padilla*, 379 B.R. 643, 657 (Bankr. S.D. Tex. 2007). Rule 2016(a) requires that creditors receive approval for their reimbursable expenses. *Id.* "The court cannot administer an estate in a just, speedy, inexpensive, efficient, and equitable manner without requiring creditors to file a Rule 2016(a) application for reimbursable expenses that creditors seek to collect post-confirmation. Without Rule 2016(a) applications, the court cannot insure compliance with §1327(a), protect a debtor's rights under 1322(b)(5), or protect a debtor's right to a "**fresh start**" after completing a Chapter 13 plan." *Padilla,* at 659. (Emphasis added.)

3

"[A] creditor's failure to file an application for post-petition fees under Rule 2016(a) means that, as a matter of law, any such post-petition fees are per se unreasonable." *In re Hence*, 2007 WL 4333834, at *8 (Bankr. S.D. Tex. 2007), *citing In re Jones*, 366 B.R. 584, 594-95 (Bankr. E.D. La. 2007).

In both of the above captioned cases, Mid-State Homes did not comply with either the letter or the spirit of Rule 2016(a) in regard to the hazard insurance premiums. It is not a difficult task to file a Rule 2016(a) application notifying the court and the interested parties that fees or costs are being requested.

The debtors, however, are not completely blameless. Tucked away neatly in their construction contracts is the "request" that Jim Walter Homes, Inc., obtain hazard insurance for the borrowers through Best Insurors, Inc., an affiliated entity. Notwithstanding this contract provision, the Hines had appropriate hazard insurance coverage throughout, but, apparently, they did not request their agency, The Mitchell Company, to add Mid-State Homes as a mortgagee/loss payee. Pryor, of course, did not obtain coverage until February 24, 2009. Regardless, Mid-State Homes, a sophisticated lender, could have easily avoided these difficulties and/or failures to communicate by complying with Rule 2016(a). Mid-State Homes was obviously in a much better position than any of these debtors to take the precautionary steps to insure that it would be reimbursed for the hazard insurance premiums that were being charged by its own affiliated insurance company. Clearly, had Mid-State Homes filed an appropriate application in the Hines case with notification to the debtors and their attorney, it would have quickly learned that appropriate insurance coverage was already in place. While this result would not have been identical in the Pryor case, filing the application would have certainly alerted Pryor that she was

expected to pay an annual insurance premium before the cumulative charges reached the overwhelming sum of $3,738.00.

The court is of the opinion that because Mid-State Homes chose to ignore the easily understandable, well-intentioned language of Rule 2016(a), its efforts to now collect these assessments from either the Hines or Pryor are unreasonable and must be disallowed. Waiting until the conclusion of the debtors' bankruptcy cases to assess these cumulative fees simply denies the debtors a fresh start after they had received their bankruptcy discharges.

IV.

Based on the foregoing, the court concludes that the hazard insurance premiums sought in both of the above captioned cases by Mid-State Homes are disallowed due to its failure to comply with Federal Rule of Bankruptcy Procedure 2016(a).

This the 16th day of April, 2009.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE