UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: GEORGE AND PATRICIA DENISE HINES          CASE NO. 03-10885

IN RE: MARY ELIZABETH PRYOR                      CASE NO. 04-15712

OPINION

On consideration before the court is a motion for reconsideration filed by Mid-State Homes regarding an opinion and order entered by this court in both of the above captioned Chapter 13 bankruptcy cases on April 22, 2009; a response to said motion having been filed by the debtors; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of these proceedings, which were consolidated for hearing, pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. These are core proceedings as defined in 28 U.S.C. §157(b)(2)(A), (B), and (O).

II.

On April 22, 2009, the court entered the aforesaid order and opinion in each of the above captioned cases which, essentially, disallowed the claims of Mid-State Homes for force placed insurance premiums that had been assessed during the administration of the cases because Mid-State Homes had failed to comply with Rule 2016(a), Federal Rules of Bankruptcy Procedure, (hereinafter Rule 2016(a)). Copies of the said opinion and order are incorporated herein for reference purposes.

III.

The factual events that apply to both bankruptcy cases are largely undisputed. The debtors, George and Patricia Denise Hines ("the Hines") and Mary Elizabeth Pryor ("Pryor"), entered into contracts with Jim Walter Homes, Inc., ("Jim Walter Homes"), for the construction of residential dwellings. Included in the transaction documentation was a building contract with an attached Exhibit "C" entitled, "New Construction Insurance Disclosure Statement." This attachment addressed the insurance coverage that the debtors as "buyers" were to maintain on their residences. If they failed to do so, Jim Walter Homes retained the right to acquire or force place insurance coverage through Best Insurors, Inc., ("Best Insurors"), an affiliated entity because of common ownership. As an additional part of the construction transaction, the debtors executed promissory notes and deeds of trust in favor of Jim Walter Homes which were collateralized by their residences. The promissory notes and deeds of trust were then assigned by Jim Walter Homes to Mid-State Homes, which was also an affiliated entity.

The Hines purchased hazard insurance coverage, but, apparently, did not request their insurance agency to add Mid-State Homes as a mortgagee/loss payee. Pryor did not obtain her own insurance coverage until much later.

Thereafter, both the Hines and Pryor filed voluntary petitions for relief in the United States Bankruptcy Court for the Northern District of Mississippi pursuant to Chapter 13 of the Bankruptcy Code. During the time that their cases were being administered, Mid-State Homes force placed insurance on both residences through its affiliate, Best Insurors, without notice to the Chapter 13 trustee, the attorney representing the Hines and Pryor, and without the approval of the court as contemplated by Rule 2016(a), Federal Rules of Bankruptcy Procedure. Shortly

2

before the debtors were to receive their bankruptcy discharges, the Chapter 13 trustee filed motions in each case styled "Trustee's Motion for an Order Declaring 1322(b)(5) Claim of Mid-State Homes Current and Defaults Cured." Prompted by these motions, Mid-State Homes filed a response asserting that Pryor owed hazard insurance premiums in the sum of $3,738.00 for the period from December 20, 2004 through February 24, 2009, and a response asserting that the Hines owed hazard insurance premiums in the sum of $4,501.00 for the period from March 19, 2003 through March 19, 2008. Insofar as the Hines are concerned, the insurance force placed by Mid-State Homes through Best Insurors duplicated the coverage that the Hines had already obtained through their own carrier.

When the trustee's motion and the responses filed by Mid-State Homes were considered, the court disallowed Mid-State Homes' claims for the force placed insurance premiums because it failed to comply with Rule 2016(a). Mid-State Homes has now moved the court to reconsider that decision.

### IV.

In support of its motion for reconsideration, Mid-State Homes makes the following arguments:

1. Rule 2016(a) applies to obligations such as professional fees or other charges that might be assessed against a debtor in bankruptcy, but not to charges such as hazard insurance premiums.

2. The court applied Rule 2016(a) to Mid-State Homes in a novel way without notice or warning.

3. The Hines should have informed Mid-State Homes that they had their own insurance coverage.

3

In the following paragraphs, the court will comment on each of these arguments.

In its supplemental memorandum, Mid-State Homes asserted the following: "Rule 2016(a) does not apply to post-confirmation mortgage expenses in a Chapter 13 bankruptcy case. It applies to professional services and expenses." In support of this comment, Mid-State Homes referred to Rule 219, the predecessor to Rule 2016. In the opinion of the court, the language of former Rule 219 lends little support for the argument posited by Mid-State Homes. Rule 2016(a) was prescribed by the United States Supreme Court on April 25, 1983, over 26 years ago, and its language superceded its predecessor, Rule 219(a). Rule 2016(a) has remained intact since that time with the exception of the substitution of the word "entity" for the word "person" in 1987. In pertinent part, Rule 2016(a) reads as follows: "[A]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended, and expenses incurred, and (2) the amount requested."

The court has reviewed the deed of trust that was executed by each of these debtors in favor or Jim Walter Homes, Inc., and notes the following excerpted language:

> Second: The Grantor shall pay the indebtedness recited in and evidenced by said note and any extensions or renewals thereof, and all other indebtedness or liability however created or evidenced; pay all taxes, assessments, levies, liens and encumbrances of every kind and nature on said property and upon this Deed of Trust and note and the monies secured hereby promptly when due and before delinquency thereof; <u>pay all costs and expenses incurred or paid by the Beneficiary in collecting the indebtedness hereby secured or in enforcing or protecting the rights and security of Beneficiary hereunder, including a reasonable attorney's fee if placed in the hands of an attorney, whether collected by foreclosure or otherwise; keep all buildings and structures now or hereafter erected upon the said premises constantly insured in an amount equal to the lesser of the actual cash value of the house now or hereafter erected on said premises or the indebtedness secured by this Deed of Trust on said house against all loss or damage by fire, windstorm or tornado, and extended coverage, as may be required by the Beneficiary,</u>

and in a company or companies acceptable to said Beneficiary. <u>All of said policies and renewals thereof shall contain standard mortgage clauses with or without full contribution as Beneficiary shall require,</u> and in such form as shall be satisfactory to the Beneficiary by which any loss or damage under said policies shall be payable to Beneficiary as its interest may appear. (emphasis supplied)

The debtors' responsibility for the costs of collection, including a reasonable attorney's fee, is set forth within the same paragraph in the deed of trust as is the debtors' responsibility to maintain hazard insurance on their residences. The court notes that collection costs could also include charges for appraisal fees, inspection fees, and the like. Provisions like those in the Jim Walter Homes deed of trust, which incidentally also includes the responsibility for the payment of ad valorem taxes, are commonplace in most deeds of trust that are executed and recorded in the State of Mississippi. It is certainly obvious that the professionals who drafted this document for use by Jim Walter Homes and Mid-State Homes saw no distinction between collection costs, including attorney's fees, and the responsibility to maintain hazard insurance coverage. Consequently, the court also sees no distinction between professional fees and hazard insurance premiums insofar as Rule 2016(a) is concerned. Indeed, the authorities that this court relied upon in its initial opinion are precisely on point. *See, In re Padilla*, 379 B.R. 643 (Bankr. S.D. Tex. 2007), *In re Hence*, 2007 WL 4333834 (Bankr. S.D. Tex. 2007), *citing In re Jones*, 366 B.R. 584 (Bankr. E.D. La. 2007). *See also, In re Gillette Holdings, Inc.*, 137 B.R. 475 (Bankr. D. Col. 1992).

In response to the argument that the court's earlier decision applies Rule 2016(a) without warning, the court would again point out that Rule 2016(a) has remained unchanged for all practical purposes for over 26 years. Only recently has this court been called upon to apply Rule 2016(a) to a procedure that Mid-State Homes has apparently been doing with impunity for years.

5

Mid-State Homes attached to its initial memorandum numerous agreed orders where debtors had resolved their disputes with Mid-State Homes or another of its affiliated entities, Walter Mortgage Company. The court would surmise that the majority of the agreements were reached after Mid-State Homes or Walter Mortgage Company made demand for the undisclosed, unapproved accumulated premiums after the debtors had emerged from bankruptcy protection. These are obviously cases where the debtors voluntarily chose to settle rather than litigate as to whether a bankruptcy statute or rule had been violated. Had any of these debtors elected to challenge Mid-State Homes, the fact that Mid-State Homes was engaging in a practice that violated Rule 2016(a) might have been determined earlier. If a dispute is not brought to the attention of the court, the court is not likely to initiate a contested proceeding sua sponte. The fact that there are so many incidents where Mid-State Homes and Walter Mortgage Company resolved disputes with Chapter 13 debtors should have been a signal to Mid-State Homes and Walter Mortgage Company that they were force placing insurance without adequate notice. These incidents should also have placed both of these companies on notice that the practice of accumulating premiums to such an extent that the aggregate sums frequently exceeded several thousand dollars would have a serious adverse impact on a Chapter 13 debtor's bankruptcy discharge, as well as, the debtor's anticipated fresh start.

The force placing of insurance by Mid-State Homes is completely unlike the acquisition of hazard insurance by a home owner. The insurance company, Best Insurors, is an affiliated entity having common ownership with Mid-State Homes. The force placing of insurance is an inter-company transaction. The court seriously doubts that Mid-State Homes actually pays Best Insurors these annually assessed insurance premiums. Much later, that responsibility falls to the

debtor.

The court finds it ironic that Mid-State Homes has attempted to blame the Hines in this dispute when they actually obtained insurance coverage on their own. Both the deed of trust and Exhibit "C" to the building contract required the Hines to obtain hazard insurance which they did. It is less conspicuous that the Hines' insurance policy should have contained the "standard mortgage clauses" which, of course, they failed to do. This latter factor is a ministerial concern which could have been easily rectified had Mid-State Homes raised the issue. Rule 2016(a) clearly places the burden on the entity seeking reimbursement of necessary expenses to file an application with the court. This is not a difficult task and the outcome is completely predictable. If the filing of a Rule 2016(a) application discloses that a debtor has not obtained insurance coverage, it is abundantly clear that the creditor is entitled to have an allowed claim for force placing the insurance, specifically because the Rule 2016(a) procedure was followed. Consequently, if the application reveals that insurance is indeed in place, the dispute can be resolved quickly at the inception without the accumulation of insurance premiums over several years. Because of these factors, the court sees little merit in Mid-State Homes argument that the Hines are somehow at fault. Mid-State Homes could have eliminated this entire dispute with minimum effort. The failure of Mid-State Homes to observe the requirements of Rule 2016(a) far outweighs any difficulty caused by the Hines' failure to have the standard mortgage clause inserted in their insurance policy. Indeed, Mid-State Homes would literally reap a windfall if the Hines were required to pay the aggregated premiums totaling $4,501.00, when they already paid for their own insurance coverage. This becomes even more evident when considering the fact that Mid-State Homes likely paid no actual monetary consideration to Best Insurors. Instead, both

companies perhaps made inter-company accounting entries in their respective financial records.

While the court is not as sympathetic toward Pryor since she did not obtain her own insurance, the greater fault is still attributable to Mid-State Homes for its failure to observe the requirements of Rule 2016(a). It allowed the force placed insurance premiums to accumulate over several years reaching a total sum of $3,738.00, without notice to the Chapter 13 trustee, the debtor's attorney or the court. Had Mid-State Homes simply filed an appropriate application with the court, all of these parties would have been put on notice and its claim for the force placed insurance premiums would have been allowed. As appropriately stated in *In re Hence*, *supra*, the failure of Mid-State Homes to file an application for post-petition fees (which is exactly what a force placed insurance premium is), under Rule 2016(a) means that, as a matter of law, any such post-petition fees are per se unreasonable.

In summary, the court finds no merit in Mid-State Homes' motion for reconsideration. It will be overruled by a separate order of this court to be entered contemporaneously herewith.

This the 18th day of June, 2009.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE